IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HORIZON LINES, INC.<br>Plaintiff<br>vs<br>INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (LOCAL 1575)<br>Defendant | CIVIL 08-1694CCC |

## OPINION AND ORDER

The action before us, filed pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §18, seeks review of the May 28, 2008 arbitration award. An arbitration award may be confirmed in any district court having subject matter and personal jurisdiction.   See, Apex Plumbing Supply Inc. v. U.S. Supply Co., 142 F.3d. 188,191 (4th Cir. 1998).

**Facts**

The facts, as set forth in the arbitration award, are as follows.  The employer-employee relationship between petitioner Horizon Lines of Puerto Rico, Inc., (Horizon) a company in the business of maritime loading and unloading at Puerto Rico Ports and the crane operators[1] it contracts, is governed by a Collective Bargaining Agreement (CBA) between Horizon and the employees' exclusive representative, the International Longshoremen's Association (Local 1575) (Union) in effect from October 1, 2004 through September 30, 2010.  The crane operators are recruited from a pilot list entitled "Horizon Lines Equipment Control Seniority List."

---

[1]The crane operators are also referred to "top loader operators" in the CBA, which also refers to them as being on "pilot lists."

CIVIL 08-1694CCC                                  2

      During the month of April, 2006, Horizon assigned overtime hours to crane operator Edwin García.  Two other operators, Carlos Vélez and Carlos Mundo, filed a grievance claimingthat the assignment of said overtime hours to García violated the CBA.  After several months of negotiations, the Union submitted the issue for arbitration.  Horizon argued the controversy was not subject to arbitration because the company's way of assigning overtime hours had been the object of at least five (5) previous complaints and, as expressed by the company, "[i]n each and every one of them the parties have agreed that the way in which [overtime was being distributed] is the right way to handle them." (Company Submission, English translation, docket entry 10-5,p.8).  The Union's position was that just because the previous cases were resolved before arbitration did not mean that this controversy was thereby adjudged.  The Union wanted the dispute decided by arbitration precisely because there had been no hearing in the case of record, no verbal agreement or signed stipulation among the parties that would adjudicate this complaint.

      At this juncture, we turn to the controversy submitted for arbitration.  After examining Horizon's and the Union's separate submissions, the arbitrator formulated the following expression of the matter to be resolved:

> That the Honorable Madam Arbiter determine if there is or not an impediment to the Union presenting this case before arbitration for having adjudicated this matter over and over again throughout the course of at least three (3) years against the position it is now assuming.
>
> Should it be resolved that the Union has no impediment, to determine if the Company violated or not Articles IV and VI (A)(2) of the Collective Bargaining Agreements, to then provide the corresponding remedy.

Arbitration Award, English translation (docket entry 13), at pp. 3-4.

      With regard to a hearing held by the arbitrator on the issue of whether an agreement existed on how to assign overtime, the arbitrator stated,

> The notes presented by the Employer and the testimony of Mr. López Llavona, in particular, did not constitute clear and

CIVIL 08-1694CCC                                    3

>   convincing proof that an agreement existed between the parties
>   which, as a result, would adjudicate this controversy. Upon
>   examination of the notes it was observed that the handwriting
>   was difficult to understand, therefore, it was necessary for the
>   witness to read them out loud. They did not contain the official
>   Company seal, nor had they been signed by the parties.

Id., at p. 9.

The arbitrator then discussed case law on the issue of whether prior agreements in matters not reaching arbitration are binding on the parties. She cited Elkouri &Elkouri, How Arbitration Works, Sixth Ed. 2003, at pages 269-70, wherein an arbitrator is quoted as saying, in a situation similar to the one before her: "Nevertheless, all of the facts involved in those [prior] grievances were not presented and it is impossible to ascertain if the circumstances in those instances were identical to those in the present case." The arbitrator then made her own determination, stating:

>   As a general rule, arbitration is the last step in conflict resolution between the parties that are governed by a collective bargaining agreement. For this reason, it is looked upon with favor to have complaints be resolved by means of agreements during the preliminary stages of the grievance procedure Such agreements are binding upon the parties. However, it has been sustained that the agreements shall not have the effect of binding precedent when there is only knowledge of the results of informal complaints but there is no knowledge of all the facts involved or of the circumstances which gave rise to said complaints. We agree with Arbiter Gibson on determining that an agreement reached in an informal complaint shall be binding only if the evidence of all the facts and circumstances that gave rise to it are presented. In its pertinent part, Arbiter Gibson expressed:
>
>>   "Nevertheless, all of the facts involved in those grievances were not presented and it is impossible to ascertain if the circumstances in those instances were identical to those in the present case."
>
>   After analyzing and assessing the evidence presented by the parties, we determine that, the notes of Mr. López and the testimonies given in the arbitration hearing concerning the approach outlined by the Company, did not constitute the best evidence of the existence of agreements--whether verbal or written--between the parties, existing  in stages prior to

CIVIL 08-1694CCC                              4

>       arbitration, related to other cases and binding as to the
>       controversy of record.

Arbitration Award, <u>supra</u>, at pp. 11-12.

## Issue of Arbitrability

The record supports the arbitrator's determination that there was no convincing proof of the existence of an agreement between the parties that adjudicated the assignment of overtime work. More importantly, the fact that there were repeated complaints and grievances about the way in which overtime hours were assigned, rather than support Horizon's contention that the method had been agreed upon, demonstrates that the Union and its members were not in agreement with the method the company was using, because they kept on raising challenges to it. Additionally, it is impossible to ascertain whether the circumstances involved in prior complaints were identical to those before the arbiter.

We therefore affirm the first part of the award; that is, that the issue is arbitrable.

## Assignment of Overtime: the Merits

Having found that the case was subject to arbitration, the arbitrator proceeded to address the issue of the assignment of overtime on the merits. We first set forth the pertinent parts of the CBA applicable to the dispute: Article IV-A provides that seniority is defined by the length of continuous service of the employee with the Company within a specific classification in the bargaining unit from the date of his initial hire in the bargaining unit, Article IV-B provides that once an employee works 600 hours or more for the Company during an anniversary year in a specific class, said employee's name will be added to the Company "pilot list" within that class, and that the "pilot lists" will be used for the purpose of selecting employees for work assignments by seniority, Article IV-C states that, except for the Marine department, where seniority will be determined by gang(s), seniority will be

CIVIL 08-1694CCC                        5

observed in each department. Article VI (A) of the CBA provides that "[a]ll overtime hours worked under this agreement shall be assigned by classification **and/or** seniority **and/or** area of work."

The Union alleged that during the period in question, the Company assigned overtime hours to crane operator García with less seniority than crane operators Mundo and Vélez,[2] who held the same classification, worked in the same work area and who were available to work the overtime hours, in violation of the above-cited seniority clause. Horizon disagreed, arguing that García worked in a different work area than the other two on the dates in dispute, and that the need for overtime hours arose in García's work area. According to Horizon, there are three different "yards" or work areas: the Seguí Yard, the Main International Yard and the Main Domestic Yard.

The arbitrator, in analyzing the term "yard", referred to the different instances in which the term is used in the CBA stating:

> In relation to which are the crane operator work areas, the Collective Bargaining Agreement makes reference to the "yard" as the work area where the personnel perform their job operations. To that effect, the Collective Bargaining Agreement provides the following in Article I:
>
> Article I - Recognition
>
> The Company recognizes the Union as the exclusive collective bargaining representative of the employees in a unit and employed by the Company in all of the ports of the Island of Puerto Rico engaged in the handling of cargo, loading and unloading of its vessels, including: but not limited to . . . top loader operators (yard and vessel)....
>
> Other provisions (Article VI concerning "Work Hours") within the Collective Bargaining Agreements provide as follows:
>
> 1) Article VI, (B)(2c): Personnel for the maintenance, yard and refrigeration areas will be selected fifteen (15) minutes prior to the hour.

---

[2] In order of seniority, among those three, Mundo was highest, then Vélez, then García was last.

      2) Article VI, (C)(1):  . . . The number of hours to be worked in the yard or in the terminal shall be specified in the posting.

      3) Article VI, (C)(3a):  <u>Fixed Floater</u>:  . . . top loader operator, longshoremen, driver, checker and gateman, in the yard....

      4) Article VI (C)(5): <u>Checkers</u>:  . . . checkers may be moved to perform work within their classifications in the yard and aboard vessel, as needed....

      5) Article VI (C)(7): <u>Stevedores</u>: The stevedores for the yard operations....

      6) Article VI (C)(8c): "<u>Force Majeure</u>:" In the event of "force majeure," if yard personnel is needed....

      (7) Article [VIII] (C)(27):[3]  . . . The Company will keep all yards in good condition....

      (8) Article [VIII] (C)(61): The Company will keep the yards and working areas well illuminated....

The arbitrator's determination that the three crane operators involved in the controversy all worked in one same area is clearly set forth at page 24 of her decision. (English translation):

      From an analysis of the Collective Bargaining Agreement as a whole, and based on the evidence presented, we conclude that the Patio or "**yard**" is a general term which refers to the area or areas where the personnel works. Furthermore, the term "**yard**" or "**yards**" is used in the Collective Bargaining Agreement clauses to differentiate this area from other areas ("vessel," "maintenance," and "refrigeration").

      The Union demonstrated that the crane operators perform their functions in the area of the Main Yard and that, approximately, for the year 1985 a new area was created known as *El Seguí*.  Furthermore, this proved that with the purpose of promoting efficiency and economy in the business' operations, <u>the parties agreed</u> that whenever overtime work arose in the area of *El Seguí*, the seniority criteria would apply to the crane operators who were available and who worked in said work area.  Therefore, we conclude that plaintiffs, as well as

---

[3]Numbers 7 and 8 are actually from Article VIII-General Conditions.

CIVIL 08-1694CCC                                          7

> operator García, were working in the same work area, in the Main Yard, for which reason the Company should have assigned overtime hours to the Plaintiffs.

Arbitration award, revised translation, at 24, docket entry 16.  (Emphasis in the original.)

The arbitrator's conclusions (1) that the two complainants belonged to the same classification, that is, crane operator/top loader, as employee García, who was given the overtime assignment, (2) that the complainants had more seniority than García having been hired years before he was, and (3) that they all worked in the same general work area, the yard area, are fully supported by the evidence.  One would have to resort to different criteria than that set forth in the CBA to reach a different conclusion in favor of García and Horizon. Petitioner Horizon's reading of the criteria for assignment of overtime as classification **or** seniority **or** area of work is contrary to the plain text of the CBA provision.  Article VI (A) provides that overtime hours shall be assigned by "classification **and/or** seniority **and/or** area of work."  Reading all three criteria in the disjunctive mode, as mutually exclusive alternatives, petitioner incorrectly leaps to the last one–area of work–as the defining factor, shunts the explicit language of Aritcle VI(A), thereby bypassing its first two elements. Having done this, he then delimited García's work area as distinct and independent from that of Mundo and Vélez.

Judicial review of an arbitration award is among the narrowest known in the law. Eastern Seabord Const. Co.,Inc. v. Gray Const., Inc., 553 F.3d. 1, 3 (1st Cir. 2008).  In reviewing awards such as the one now before us, courts must accord substantial deference to the decisions of arbitrators.  Kashner Davidson Securities Corp. v. Msciz, 531 F.3d. 68, 70 (1st Cir. 2008).

> [We are] constrained by one of the narrowest standards of judicial review in all of American jurisprudence because the parties ha[ve] contracted for the decision of an arbitrator, not a judge. In order to overturn the award . . . the movant . . . must show that the award was (1) unfounded in reason and fact; (2)

CIVIL 08-1694CCC                                    8

>  based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.

<u>UMass Memorial Medical Center, Inc., v. United Food and Commercial</u>, 527 F.3d. 1, 4 (1st Cir. 2008).  (Citations omitted.)

>  In an action to vacate or confirm an arbitral award, we review the district court's decision de novo, mindful that the district court's review of arbitral awards must be 'extremely narrow and exceedingly deferential.  We have found arbitral awards "nearly impervious to judicial oversight" because both parties "have contracted to have disputes settled by an arbitrator" and therefore "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.
>
>  Further, that a reviewing court is convinced that the arbitrators committed error--even serious error--does not justify setting aside the arbitral decision.  This remains true whether the arbitrator's apparent error concerns a matter of law or a matter of fact.
>
>  It is the arbitrator's result, after all, not his reasoning, which is subject to judicial review.  A court should uphold an award that depends on the arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation.  Even erroneous reasoning will not necessarily lead to vacating the award.

<u>Id.</u>, at 5.  (Citations omitted.)

For the reasons stated, the Petition to Vacate Arbiter's Award dated May 28, 2008 is DISMISSED.

SO ORDERED.

At San Juan, Puerto Rico, on July 16, 2010.

                                        S/CARMEN CONSUELO CEREZO
                                         United States District Judge